UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YVETTE EANNAZZO and MICHAEL EANNAZZO,

Plaintiffs,

-against-

THE VILLAGE OF ELMSFORD, NEW YORK, ROBERT WILLIAMS in his official capacity as Mayor of the Village of Elmsford, BLEAKLEY PLATT & SCHMIDT, LLP in its official capacity as Village Attorney for the Village of Elmsford, BLEAKLEY PLATT & SCHMIDT, LLP, MICHAEL STARVAGGI in his official capacity as Labor Counsel to the Village of Elmsford, MICHAEL STARVAGGI in his personal capacity, LINO SCIARRETTA in his official capacity as Village Attorney for the Village of Elmsford, and LINO SCIARRETTA in his personal capacity,

Defendants.

25-CV-9585 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiffs Yvette and Michael Eannazzo, longtime residents of the Village of Elmsford, bring this suit to vindicate their rights following a retaliation campaign levied against them by the Mayor of the Village of Elmsford, the village attorneys, and other local officials. The campaign began when Yvette inadvertently started a Facebook livestream—and it ended when Michael was fired from his job as the Village's Director of Information Technology.

Defendants, on behalf of the Village Attorneys, move to dismiss Plaintiffs' claims. The Court grants their motion in part and denies it in part. On the one hand, the Court dismisses Plaintiffs' unlawful termination and unlawful retaliation claims because Plaintiffs do not allege those causes of action against the Attorney Defendants; Plaintiffs' official capacity claims against

the Attorney Defendants because those claims are duplicative of Plaintiffs' claims against the Village, and Plaintiffs concede that these claims should be dismissed; Plaintiffs' attorney misconduct claim because the relevant events took place outside of the context of a pending court case and did not rise to the level of "egregious" or "extreme" conduct required by the statute; and Plaintiffs' tortious interference claim because Plaintiffs fail to specify which parts of Micheal's contract Defendants breached. On the other hand, Plaintiffs' civil conspiracy claim survives because the Court cannot take judicial notice of Defendants' timeline of events at this stage of litigation. Accordingly, the majority of Plaintiffs' claims against the Attorney Defendants are dismissed, but Plaintiffs' civil conspiracy claim survives.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Amended Complaint ("AC") and its attached exhibits, ECF No. 17, and are presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). As discussed further below, the Court also takes judicial notice of an exhibit filed by Defendants in support of their motion to dismiss—the Village of Elmsford Board of Trustees' meeting minutes on April 7, 2024 (the "Minutes"). ECF No. 20-2; *see infra* Section I.

Plaintiffs Yvette Eannazzo ("Yvette") and Michael Eannazzo ("Michael") (collectively, "Plaintiffs") have long been involved community members in the Village of Elmsford (the "Village"). ¶¶ 16–17. Yvette worked as the Confidential Secretary to the Village Administrator for approximately twelve years. ¶ 16. She volunteered "on and off" for the Village of Elmsford Fire Department and the Village of Elmsford Fire Department Ladies' Auxiliary for about twenty years. *Id.* She was also a volunteer Police Constable for eighteen years. *Id.* Michael, for his part, worked as the Director of Information Technology at the Village of Elmsford for

approximately four years. ¶ 17. He, too, volunteered with the Village of Elmsford Fire Department, and served as the First Assistant Fire Chief after volunteering with the Department for some thirty years. *Id.* He was a Trustee of the Village of Elmsford for about eleven years, from approximately 2009 to 2020. *Id.* And he is a Sergeant in the Police Constables, where he has volunteered for thirteen years. *Id.*

On March 7, 2022, Yvette "inadvertently live-streamed a video on Facebook Live in which she stated, in pertinent part, 'is Matt ready to be Mayor?'" ¶ 18. She was referring to Matt Evans, a perceived political rival of Mayor Robert Williams ("Mayor Williams"). *Id.* Mayor Williams—who had recently been the subject of a local news article "focusing on [his] demand for loyalty—learned about Yvette's comment "and took offense." *Id.* Yvette and Michael were then both subjected to what they describe as "a retaliatory course of conduct": Mayor Williams and another Village employee named Diana DiDomenico ("DiDomenico") deprived them of opportunities to earn compensatory time, audited Yvette's vacation and compensatory time, temporarily prevented Michael from using a Village vehicle that had previously been assigned to him, and stopped reimbursing Yvette for her cell phone bill, even though she used her cell phone for Village business. ¶ 19. Mayor Williams and DiDomenico also "demean[ed] the Plaintiffs within the office," delayed paying Yvette, did not properly communicate to Plaintiffs about human resources issues, and removed Plaintiffs from the Police Constable's communications and emails for months. *Id.*

Before Yvette's livestream, Plaintiffs each earned approximately three weeks of additional compensatory time per year. ¶ 20. After Yvette's comments were broadcast on Facebook, neither Plaintiff was "offered the opportunity to earn a single hour of compensatory time"—outside of Michael's mandatory compensatory time accrued during Village Trustee

Meetings. *Id.* This conduct continued until Michael was ultimately fired in April 2025 and Yvette retired in September 2025. ¶¶ 3, 20, 31.

On July 26, 2023, Yvette emailed the Village Manager, Michael Mills ("Mills"), and the Village of Elmsford Board of Trustees (the "Village Board") to report "the retaliatory course of conduct they were suffering at the hands of Mayor Williams and Diana DiDomenico." ¶ 21. After Mills requested additional information, Plaintiffs submitted a detailed complaint. *Id.* They have appended a copy of that complaint to their Amended Complaint in the instant case. *Id.*; *see* ECF No. 17-1. Still, the "retaliatory conduct continued unabated." ¶ 22.

As a result of Plaintiffs' complaint, however, the Village of Elmsford conducted an internal investigation. ¶ 23. And following that investigation, the Village Board voted to censure Mayor Williams. ¶ 24. In its Resolution of Censure, which Plaintiffs also attached to their Amended Complaint, the Village Board found that "Mayor Williams retaliated against the [Plaintiffs] for their perceived disloyalty by denying them opportunities to earn compensatory time; and . . . this behavior was inappropriate and improper." *Id.*; *see* ECF No. 17-2. Still, "Mayor Williams continued to unlawfully retaliate against the Plaintiffs." ¶ 25.

On or about June 11, 2024, Plaintiffs served their first Notice of Claim on the Village of Elmsford. ¶ 26. Nevertheless, the "same retaliatory conduct persisted." *Id.* Towards the end of the year and into the following year, Plaintiffs then campaigned for Matt Evans to become Village Mayor. ¶ 27. But on March 13, 2025, Mayor Williams was re-elected, along with two new Village Trustees. ¶ 28. On or about April 7, 2025, the former Village Attorney, Daniel Pozin, was fired from his position. ¶ 29. And on the morning of April 7, 2025, the new Trustees were sworn in. ¶ 30. The new Board of Trustees began their first meeting at 12:45 p.m. that day. *Id.*

Thirty minutes earlier, at approximately 12:15 p.m., "in the midst of settlement negotiations related to the first Notice of Claim," Michael Eannazzo was fired. ¶ 31. Plaintiffs report that Michael "was terminated by Mayor Williams" and that Defendant Lino Sciarretta ("Sciarretta"), an attorney at the law firm Bleakley, Platt & Schmidt LLP ("Bleakley Platt"), was "present in the room and communicating directly with" Michael. *Id.* Plaintiffs allege that Michael was fired "in retaliation for making [] complaints" and "for filing the Notice of Claim." *Id.* Mayor Williams explained to Michael "that the Board of Trustees decided to terminate him because the Board was going in a different direction." ¶ 32. Mayor Williams also told Michael that "we have been talking about it all weekend." *Id.* Finally, Michael was "instructed to go over transition details" with Niel Anand, Michael's replacement, who was also present at the meeting. ¶ 33.

Later that day, Bleakley Platt was retained by the Village and Sciarretta was sworn in as Village Attorney. ¶¶ 36–37. Plaintiffs state that these appointments occurred "at approximately 12:45 p.m." *Id.* The Board of Trustees' Minutes show that the motions to hire Bleakley Platt and Sciarretta were approved once the meeting reconvened at 2:12 p.m. ECF No. 20-2 at 1.

Next in the Minutes, the Village Board approved a motion to abolish the position of Coordinator of Computer Services. *Id.* at 2. Although the Amended Complaint describes Michael's role as the Director of Information Technology, Defendants state—and Plaintiffs do not appear to dispute—that Michael was employed as the Coordinator of Computer Services. *See* ECF No. 19 ("MTD") at 2 ("These minutes reflect that Plaintiff's position as Coordinator of Computer Services was abolished . . . ."); *see generally* ECF No. 23 ("Opp.") (not taking issue with Defendants' characterization). Plaintiffs also assert in the Amended Complaint that "[a]lthough the Village claims that Mr. Eannazzo's position was abolished and he was 'laid off,'

upon information and belief, the Village took none of the steps necessary to formally abolish a position." ¶ 38. "Specifically," Plaintiffs continue, "there was no audit and no communication with the Westchester Commissioner for Human Resources concerning approval for the purported 'layoff.'" *Id.*

The motion to abolish the Coordinator of Computer Services position carried 3–1, with Mayor Williams abstaining. ECF No. 20-2 at 3. This vote took place in the same block as the motions to hire Bleakley Platt and Sciarretta, but before the meeting was adjourned at 2:20 p.m. *Id.* at 1–3. According to the Minutes, the Village Board decided to abolish the position "for budgetary and economic reasons." *Id.* at 3. In two subsequent resolutions—each also adopted by a 3–1 margin, with Mayor Williams not voting—the Village Board then voted to "terminate" "Employee #000029329 . . . the only employee in the jurisdictional class and layoff unit of the position being abolished," and hire Westchester Technology "to provide information technology services to the Village." *Id.* at 4–5.

Then, on April 30, 2025, Michael Starvaggi ("Starvaggi"), an attorney employed by Bleakley Platt and Labor Counsel for the Village of Elmsford, sent Michael an "Independent Contactor Agreement and General Release" (the "Release") on behalf of the Village. ¶ 41. Drafted as a settlement agreement, the document offered Michael part-time work in exchange for him "waiving his right to recover monetary damages from the Village for . . . the claims set forth in his Notice of Claim dated June 11, 2024." *Id.* Plaintiffs also attached a copy of this document to their Amended Complaint. ECF No. 17-3. Starvaggi did not send the document to Plaintiffs' counsel, even though the Release referenced them and Plaintiffs had been represented by the same counsel since 2024. ¶ 41. It appears Michael never signed the document. *See* ECF No. 17-3; MTD at 3 ("The agreement was never executed and the claims that would have been waived

had he signed the agreement are being pursued in this litigation.”). Nonetheless, according to Plaintiffs, sending the document in this manner was Defendants’ “attempt to trick Mr. Eannazzo into waiving his right to recover damages.” ¶ 42.

On October 8, 2025, Plaintiffs filed the instant case in the Supreme Court of the State of New York, County of Westchester. *See* ECF No. 1; ECF No. 9. They assert claims for unlawful termination under New York Civil Service Law § 75(1)(a), ¶¶ 51–56; unlawful retaliation under New York Civil Service Law § 75-b, ¶¶ 57–61; unlawful discrimination under New York Labor Law § 201-d, ¶¶ 62–66; unlawful retaliation pursuant to 42 U.S.C. § 1983 (“Section 1983”) and the First and Fourteenth Amendments of the United States Constitution, ¶¶ 67–73; unlawful taking pursuant to Section 1983 and the Fifth and Fourteenth Amendments, ¶¶ 74–80; attorney misconduct under New York Judiciary Law § 487(1), ¶¶ 81–84; tortious interference with contract, ¶¶ 85–88; and civil conspiracy, ¶¶ 89–94. And they seek back pay, front pay, compensatory damages for lost benefits and emotional distress, treble damages for attorney misconduct, and “just compensation for the unlawful taking of [Michael Eannazzo’s] vested property interest in continued employment.” AC at 20.

On or about October 27, 2025, Defendants were served with the complaint. ECF No. 1 at 1. On November 17, 2025, Defendants timely removed the case to this District, *id.*, and on January 12, 2026, Defendants moved to dismiss Plaintiffs’ claims against Bleakley Platt, Sciarretta, and Starvaggi (together, the “Attorney Defendants”). ECF No. 11. The Court ruled that, pursuant to Federal Rule of Civil Procedure 12(a)(4), Defendants need not answer Plaintiffs’ remaining claims until fourteen days after that motion is decided. ECF No. 14. On February 11, 2026, Plaintiffs then filed their Amended Complaint. AC. Shortly thereafter, on March 4, 2026, Defendants filed a renewed motion to dismiss on behalf of the Attorney Defendants. ECF No. 18.

Plaintiffs opposed the motion on April 2, 2026. Opp. Defendants replied on April 9, 2026. ECF No. 24 ("Reply").

For the reasons set forth below, the Court GRANTS the Attorney Defendants' motion to dismiss in part and DENIES it in part.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

## DISCUSSION

This discussion proceeds in six parts. First, the Court determines that it will take judicial notice of the April 7, 2024 Minutes but will not consider the parties' conflicting timeline of events at that meeting. Next, the Court dismisses Plaintiffs' First, Second, and Fourth Causes of Action, as well as their official capacity claims, against the Attorney Defendants. Third, the

Court dismisses Plaintiffs' attorney misconduct claim pursuant to New York Judiciary Law § 487(1) because the relevant events took place outside of the context of a pending court case and because they did not rise to the level of "egregious" or "extreme" conduct required by the statute. Fourth, the Court dismisses Plaintiffs' tortious interference claim because Plaintiffs fail to specify which parts of Micheal's contract were breached. Fifth, the Court concludes that Plaintiffs' civil conspiracy claim survives; to credit Defendants' argument, the Court would need to take judicial notice of Defendants' timeline of events, which it cannot do at this stage of litigation. Finally, the Court denies Plaintiffs leave to amend their dismissed claims.

## I. The Court Takes Judicial Notice of the Meeting Minutes, But Not the Disputed Timeline

As an initial matter, the Court decides which materials it will consider in evaluating Defendants' motion to dismiss. In particular, the Court assesses whether it will consider the Village of Elmsford Board of Trustees' meeting minutes from April 7, 2024, which are relevant to the parties' dispute over whether Michael was fired before or after the Board hired the Attorney Defendants. ECF No. 20-2; *see* MTD at 2; Opp. at 6.

"In adjudicating a Rule 12(b)(6) motion, a district court 'confines its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (quoting *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 107 (S.D.N.Y. 2009)). Municipal meeting minutes fall into this last category: "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." *Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *see 76 Route 6 Holdings Inc. v. Town of Yorktown*, No. 25-CV-693 (KMK), 2026 WL 867180, at *4 (S.D.N.Y.

Mar. 30, 2026) (taking judicial notice of a town's municipal meeting minutes "because they are minutes in the public record"); *Schubert*, 775 F. Supp. 2d at 695 n.3 (S.D.N.Y. 2011) (collecting cases) (explaining that "the minutes and recordings of the City Council meetings are matters of public record and therefore are the types of materials of which a court may take judicial notice"); *Pesano v. Anderson*, No. 97–CV–4049, 1999 WL 232037, at *1 (S.D.N.Y. Apr. 13, 1999) (taking judicial notice of the contents of a town board's budget resolutions); *Franco v. Siry*, No. 22-CV-4674 (PKC) (SIL), 2024 WL 2701646, at *5 (E.D.N.Y. May 24, 2024) ("When ruling on motions to dismiss, courts in this Circuit regularly consider town codes, public meeting minutes, and decisions of local bodies such as zoning boards.").

Generally, however, courts take judicial notice of public meeting minutes "for the limited purposes of determining the actions taken by the relevant parties, not for the truth of any statements made during the meeting." *76 Route 6 Holdings Inc.*, 2026 WL 867180, at *4 (citing *Knights of Columbus Council 2616 v. Town of Fairfield*, No. 22-CV-1579, 2024 WL 3900102, at *5 n.2 (D. Conn. Aug. 22, 2024)); *see also Lewis v. M&T Bank*, No. 21-933, 2022 WL 775758, at *1 (2d Cir. Mar. 15, 2022) (summary order) (noting that courts "may take judicial notice of publicly available documents" but "must do so" to determine what statements those documents contain, not for the truth of the matter asserted); *Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*, No. 11–CV–5608 (CS), 2013 WL 135216, at *4 (S.D.N.Y. Jan. 10, 2013) ("[I]t is well established that courts may take judic[i]al notice of publicly available documents on a motion to dismiss. In the motion to dismiss context, however, a court should generally take judicial notice to determine what statements the documents contain[,] not for the truth of the matters asserted." (internal citation omitted)); *Schubert*, 775 F. Supp. 2d at 695 n.3 (adding that the court would consider public meeting minutes "for the limit[ed] purposes of determining the

fact of the meetings and the actions taken by the relevant parties, not for the truth of any statements made during these proceedings").

Accordingly, the Court takes judicial notice of the April 7, 2024 Town Board Minutes that Defendants appended to their motion to dismiss for the limited purpose of "determining the fact of the meeting[] and the actions taken by the relevant parties." *Schubert*, 775 F. Supp. 2d at 695 n.3. However, because Plaintiffs dispute "the accuracy and authenticity" of the Minutes, Opp. at 2, the Court does "not consider the parties' timelines"—that is, the dispute over when each of the events listed in the Minutes occurred, *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586 (CS), 2019 WL 1368560, at *9 (S.D.N.Y. Mar. 26, 2019) (taking judicial notice of planning board meeting minutes but declining to "consider the parties' timelines because the parties undoubtedly dispute the completeness and authenticity of the other side's version of events"); *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("[I]t must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." (internal quotation marks omitted)).

## II. Plaintiffs' First, Second, and Fourth Causes of Action, Along With Their Official Capacity Claims Against the Attorney Defendants, Are Dismissed

Next, the Court dismisses Plaintiffs' First, Second, and Fourth causes of action against the Attorney Defendants because Plaintiffs do not allege those causes of action against the Attorney Defendants. *See* Opp. at 3; AC. The Court also dismisses Plaintiffs' official capacity claims against the Attorney Defendants because those claims are duplicative of Plaintiffs' claims against the Village, and Plaintiffs concede that these claims should be dismissed. *See* Opp. at 5; *Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012) ("Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant.").

Therefore, the Court dismisses the following claims against the Attorney Defendants: unlawful termination pursuant to New York Civil Service Law § 75(1)(a), unlawful retaliation pursuant to New York Civil Service Law § 75-b, and unlawful retaliation pursuant to Section 1983 and the First and Fourteenth Amendments. The Court also dismisses Plaintiffs' official capacity claims against the Attorney Defendants.

## III. Plaintiffs' Attorney Misconduct Claim Is Dismissed

The Court dismisses Plaintiffs' attorney misconduct claim pursuant to New York Judiciary Law § 487(1). Under that law, "[a]n attorney or counselor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . forfeits to the party injured treble damages." N.Y. Judiciary Law § 487(1)–(2).

"[T]he purpose of Judiciary Law § 487(1) is to safeguard an attorney's special obligation of honesty and fair dealing in the course of litigation." *Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 663 (S.D.N.Y. 2025), *aff'd*, No. 25-73-CV, 2026 WL 366443 (2d Cir. Feb. 10, 2026) (quoting *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173, 178 (2020)). The statute "therefore covers not all attorney conduct, but specifically conduct that occurs 'in the context of an action pending in a court,' 'with the intent to mislead the court or a party.'" *Id.* (quoting *Bill Birds, Inc.*, 35 N.Y.3d at 178–79); *see also Looff v. Lawton*, 97 N.Y. 478, 482 (1884). Additionally, "numerous New York State courts interpreting the statute, as well as federal courts construing the state court decisions, have concluded that liability attaches [to Judiciary Law § 487(1)] only if the deceit is 'extreme' or 'egregious.'" *Ray v. Watnick*, 182 F. Supp. 3d 23, 29 (S.D.N.Y. 2016) (collecting cases), *as amended* (May 3, 2016), *aff'd*, 688 F. App'x 41 (2d Cir. 2017). "Consequently, § 487 must be strictly construed." *Id.* (citation and internal quotation marks omitted).

Here, Plaintiffs allege that the Attorney Defendants—or, at the least, Defendant Starvaggi—violated Judiciary Law § 487(1) because he failed to send the Release to Plaintiffs' counsel. *See* AC ¶ 41. According to Plaintiffs, this conduct evinced an intentional and deceitful ploy by the Attorney Defendants to "send the settlement paperwork directly to Mr. Eannazzo with the hope that he would be fooled into signing it without reviewing it." Opp. at 5; *see* AC ¶¶ 81–84.

These allegations fail to state a Section 487(1) claim. Not only did these events occur outside of "the context of an action pending in a court," *Delaney v. HC2, Inc.*, 761 F. Supp. 3d at 668 (internal citation omitted)—Starvaggi sent the Release many months before Plaintiffs commenced this action—but the facts as alleged, even when taken in the light most favorable to Plaintiffs, "do not rise to the level of 'egregious' or 'extreme'" required by the statute, *Ray v. Watnick*, 182 F. Supp. 3d at 31–32. Indeed, it remains unclear whether the Court can even draw a reasonable inference that the conduct was intentionally deceitful. *See Delaney v. HC2, Inc.*, 761 F. Supp. 3d at 663 (quoting *Bill Birds*, 126 N.Y.S.3d at 54 n.3) (explaining that the "statute 'guards against false statements by lawyers during litigation, rising to the level of intentional deceit or collusion; it was not designed to . . . include merely poor lawyering").

Accordingly, Plaintiffs' Section 487(1) claim is dismissed.

## IV. Plaintiffs' Tortious Interference Claim Is Dismissed

Plaintiffs' tortious interference claim fails as a matter of law. The parties dispute whether the Attorney Defendants were in privity of contract with the Village when Michael Eannazzo was fired—namely, they dispute whether Sciaretta and Bleakley Platt were hired before Eannazzo was fired. *See* MTD at 7–8; Opp. at 5–7. Indeed, the parties present different versions of events about when Sciaretta and Bleakley Platt were hired and when Eannazzo was fired. *Compare*

MTD at 2 (arguing that the Town Board abolished Eannazzo's position after Sciaretta and Bleakley Platt were appointed) *with* Opp. at 6 (arguing that Sciaretta "unlawfully interfered with Mr. Eannazzo's employment . . . *before* the Attorney Defendants were hired by the Village"). Of course, at this stage of the litigation, the Court must "accept[] all factual allegations in the complaint as true[] and draw[] all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted).

But the Court need not wade into these murky waters in order to resolve the legal question in assessing this claim. "Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (internal quotation marks omitted) (citing *Lama Holding Co. v. Smith Barney Inc.*, 646 N.Y.S.2d 76, 82 (1996)).

Here, "there are no facts present in the complaint to support an inference that [Michael's] termination constituted a breach of any contract." *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 152 (S.D.N.Y. 2022). In order to state a claim for tortious interference, "a plaintiff 'must identify what provisions of the contract were breached as a result of the acts at issue.'" *Id.* (internal citation and quotation marks omitted). And "[w]here the supervisor's decision to terminate an employee was within their ordinary duties, courts have routinely denied claims of tortious interference." *Id.* at 152–53 (citing *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 425 (E.D.N.Y. 2010); *Kanhoye v. Altana Inc.*, 686 F. Supp. 2d 199, 215 (E.D.N.Y. 2009)).

Plaintiffs allege no such facts in their Amended Complaint. *See* AC. Plaintiffs simply state that "Michael Eannazzo had an employment contract with the Village," the Attorney Defendants knew about the contract, and the Attorney Defendants "intentionally induc[ed] the Village to unlawful[ly] breach its employment contract with Michael Eannazzo." AC ¶ 40. Although the "well-pleaded facts allege that it was unlawful to terminate Mr. Eannazzo without due process," Opp. at 6, Plaintiffs do nothing more than "allege in conclusory terms that a contract existed and was breached." *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 2018 WL 1273343, at *11 (S.D.N.Y. Mar. 5, 2018); *see Bennett v. State Farm Fire & Cas. Co.*, 26 N.Y.S.3d 554, 555 (2d Dep't 2016) (dismissing a tortious interference claim where the plaintiffs "fail[ed] to plead the terms of the alleged underlying contract between the[m] and [the third party], and any specific breach thereof"). That the Attorney Defendants and Mayor Williams talked about Michael's firing "all weekend" and that Sciaretta took part in the meeting where Michael was fired does not address this deficiency. *See* AC ¶¶ 31–32.

Accordingly, Plaintiffs have failed to state a claim for tortious interference.

## V. Plaintiffs' Civil Conspiracy Claim Survives

Unlike the other claims, Plaintiffs' civil conspiracy claim survives. Defendants rely on the "intracorporate conspiracy doctrine" to argue that this claim should be dismissed. *See* MTD at 8–9; Reply at 5. However, because their argument turns entirely on parts of the Town Board Minutes that the Court does not notice at this stage of litigation, their argument is unavailing.

The intracorporate conspiracy doctrine provides that "officers, agents and employees of a single corporate entity are legally incapable of conspiring together," *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 388 (S.D.N.Y. 2013) (quoting *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008)). "Although the doctrine had its genesis in cases involving corporations,

numerous courts, including this Court, have applied the doctrine to public entities." *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (collecting cases); *see Dowd v. DeMarco*, 314 F. Supp. 3d 576, 587 (S.D.N.Y. 2018); *Anemone v. Metro. Transp. Auth.*, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006). And while the doctrine also "typically applies in federal antitrust and civil-rights cases, there is no reason not to apply the doctrine to New York state conspiracy claims as it is rooted in the New York state common law." *Heilbut v. Cassava Scis., Inc.*, 778 F. Supp. 3d 551, 576 (S.D.N.Y. 2025) (internal citations and quotation marks omitted); *see Bereswill v. Yablon*, 189 N.Y.S.2d 661, 664 (1959)) ("To say such a relationship affords a basis for a conspiracy is much the same as saying an individual or a corporation can conspire with himself or itself. This cannot be done and a complaint so drawn is legally insufficient.").

Nevertheless, the doctrine does not apply here—where, construing Plaintiffs' complaint as true and in the most favorable light, the Court cannot conclude that the Village and the Attorney Defendants were part of the same "entity." *Chamberlain*, 986 F. Supp. 2d at 388 (internal citation omitted). Plaintiffs allege that the Town Board had not yet appointed the Attorney Defendants before "Sciarretta and Bleakley Platt conspired, colluded, aided, abetted, and acted in concert with Mayor Williams and the Board of Trustees to unlawfully terminate Michael Eannazzo," so the Court cannot credit Defendants' intracorporate conspiracy doctrine argument. ¶¶ 35, 50

Defendants point to the Town Board Minutes to stress that Plaintiffs' conspiracy claim "is merely a claim that the Town acted unlawfully through its agents" and that "the decision to terminate [Michael's] position was undertaken by resolution of the Town Board . . . not by any separate act of the Attorney Defendants." MTD at 9. But, as explained *supra*, the Court only

takes judicial notice of the Minutes for the limited purpose of "determining the fact of the meeting[] and the actions taken by the relevant parties," *Schubert*, 775 F. Supp. 2d at 695 n.3, not "the parties' timelines," *Town & Country Adult Living, Inc.*, 2019 WL 1368560, at *7. In other words, the Court takes judicial notice of the fact that the April 7, 2024 meeting occurred—and that the Attorney Defendants were hired at that meeting. *See* ECF No. 20-2 at 1–2. But the Court cannot take judicial notice of whether the Attorney Defendants were hired before, or after, Michael was fired. *See Town & Country Adult Living, Inc.*, 2019 WL 1368560, at *7.

At this stage of the litigation, then, crediting the Amended Complaint's recitation of the facts, Plaintiffs' civil conspiracy survives.

## VI. The Court Denies Leave to Amend

Finally, the Court *sua sponte* denies Plaintiffs leave to amend the dismissed claims against the Attorney Defendants. "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, further amendment would be futile. Plaintiffs have identified no facts that would alter the Court's outcome. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (stating that requests to replead should be denied when "[t]he problem with [the pleading] is substantive" and "better pleading will not cure it"). Additionally, Plaintiffs have already filed an Amended Complaint once in response to Defendants' earlier motion to dismiss. AC; *see also Ruotolo*, 514 F.3d at 191 (affirming denial of leave to amend "given the previous opportunities to amend"). They were therefore on notice of the deficiencies in their complaint but failed to add sufficient

allegations to address those deficiencies. Therefore, the Court denies Plaintiffs leave to amend the dismissed claims.

**CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' First, Second, and Fourth Causes of Action, as well as their official capacity claims against the Attorney Defendants, are dismissed. So, too, are their attorney misconduct claim pursuant to New York Judiciary Law § 487(1) and their tortious interference claim. Plaintiffs' civil conspiracy claim, however, survives. Finally, the Court denies Plaintiffs leave to amend their dismissed claims.

As previously ordered, Defendants are directed to respond to Plaintiffs' remaining claims within fourteen days of this Opinion & Order. See ECF No. 14.

The Clerk of Court is respectfully directed to terminate ECF Nos. 11 and 18.

Dated: September 17, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge